Appellant James L. Hooten was indicted, tried and convicted in the Circuit Court of Jackson County for the crime of murder and sentenced to life imprisonment under the jurisdiction of the Department of Corrections.
This case has a long and complicated history. For the purpose of this appeal, after giving careful study of the entire record, briefs and oral arguments, we find a reversal is required on one assignment of error. It is, therefore, not necessary for us to discuss all of the assignments of error, as they probably shall be handled differently on retrial.
One Reuben Wood, who lived in Gautier in Jackson County, Mississippi, was shot and killed on the night of November 3, 1977. His body was found at the doorway to his mobile home. Appellant, a resident of Savannah, Georgia, at that time, was indicted under a charge of murder by the Jackson County Grand Jury on August 25, 1978. The trial was delayed until August 20, 1980, because of efforts on the part of appellant to resist extradition from Georgia to Mississippi. There is no need to discuss any of those proceedings here.
The alleged assignment of error raised in the lower court and in this Court requiring a reversal is that
 "The state suppressed discovery material in violation of the court's order which denied appellant a fair trial."
The record clearly reveals a flagrant violation by the prosecution of the Mississippi Uniform Criminal Rules of Circuit Court Practice of the court in which appellant was being tried, a flagrant violation of the order of the trial court and the prior opinions of this Court.
Briefly stated, the case presented by the state was that on November 3, 1977, appellant came by commercial airline to Mobile, Alabama, arriving there at 2:21 p.m. He then, according to a witness for National Car Rental Systems, Inc., rented a car that was to be returned the following day. The car rental personnel witness identified appellant as the person renting the car at that time. The car was returned to the rental office at 6:08 a.m. on the morning of November 4. It was the contention of the state that appellant drove to Gautier in the rental car, a distance of 44.6 miles from Mobile, shot Wood sometime that night, and returned to Mobile and caught a commercial airline back to Georgia.
One of the main witnesses for the state was Charlotte Acheson, the manager of a convenience store in Gautier. Her testimony probably was essential to the state's case. She testified that on the afternoon of November 3, appellant came into the convenience store and requested directions to Narcissus Street, where Wood lived. The witness testified she drew the person, whom she identified as appellant, a map on a piece of paper and fully explained to him how to reach the requested destination. Acheson testified that the encounter with appellant happened sometime on the afternoon of the third of November, but "I don't know what time." She normally stopped working at 2 p.m., but about half the time she was in the store after two o'clock. She reiterated on cross examination that she did not remember what time appellant came to the store, but again positively and unequivocally identified appellant as the person for whom she drew a map indicating how to reach the street on which Wood lived. She stated again that the incident could have happened any time during the afternoon, as she, the manager, normally would be there at any time after two o'clock, her usual quitting time.
On April 5, 1980, appellant, through his attorneys, filed a motion styled "Motion to Compel Discovery of All Material and Tangible Evidence." This was a complete and exhaustive motion under Section 4.06 of the Mississippi Uniform Criminal Rules of Circuit Court Practice and under the requirements of Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), andU.S. v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Although an *Page 1390 
order is not required under this Mississippi Criminal Rule, the lower court on August 19, 1980, executed a comprehensive order directing that the state discover to appellant essentially all those things requested in appellant's motion, including "The statements of all persons, . . . if said statements are exculpatory," and "copy of all exculpatory material concerning the defendant."
On trial that lasted several days, witness Charlotte Acheson was introduced, along with seventeen other state witnesses, and testified essentially as hereinbefore set out. At no time prior to her complete testimony, both direct and cross, was any information or material furnished appellant's attorneys regarding prior written statements by Acheson.
In some manner, not clear in the record, during the testimony of the last state witness, it became known that former witness Acheson had given the state a statement six days after the killing. The prosecuting attorneys made no statement into the record, that can be found by us, as to why this statement was not given previously to appellant's attorneys, who became aware of the statement before the final day of testimony. Appellant's attorneys indicate that it was ascertained in some manner during the testimony of Cox, the state's last witness.
After the statement or "cat" was out of the bag, the state placed Acheson on the stand in rebuttal for the obvious and only purpose of explaining inconsistencies in her statements. As pointed out, her statement of November 9, 1977, in some manner had shortly before come into the possession of appellant's attorneys, who introduced it in evidence, after Acheson had been placed on the stand in rebuttal.
An examination of the statement given by Acheson to representatives of the state, six days after the killing, reveals that Acheson stated at the time that the car appellant was driving when she drew him the map had a Georgia license tag. The statement further read that Acheson was sure that appellant came into the store before 2 p.m., and she did not go back to the store on the day in question after that time because she had to stay home and babysit for her two grandchildren. She made the positive statement, "I know I left at 2 o'clock or thereabouts."
One requirement of Rule 4.06 of the Criminal Rules provides that:
 Upon request of the defendant, the prosecution shall furnish to the court in camera, any prior written statements of witnesses. If these materials are found to be materially inconsistent with the witness's testimony, the statements shall be supplied to defense counsel prior to cross-examination.
In addition to the above rule provision, the court's order required a production of any statement containing exculpatory material.
It is readily apparent that Acheson's written statement six days after the killing was entirely different from her testimony three years after the killing. She stated positively in her statement that appellant's car bore a Georgia license tag. The rental car records showed the car appellant rented on the afternoon of November 3, 1977, bore an Alabama license tag. As hereinbefore set out, Acheson's testimony in chief and in rebuttal was that Hooten could have been at her convenience store at any time during the afternoon. In her statement six days after the killing, Acheson stated positively that it had to be before two o'clock, as she did not go to the store after two o'clock because of her babysitting duties.
The state's proof was positive that appellant did not arrive in Mobile until after two p.m. and, considering the time required to rent a car and traverse the distance of 44.6 miles to Gautier, it is readily apparent from her prior statement that Acheson could not have seen anyone she identified as the appellant prior to 2 p.m. She was positive about the facts in her statement. Obviously, nothing could have been more exculpatory; particularly as Acheson was probably the main witness for the state. *Page 1391 
Another statement that appellant's attorneys in some way came into possession of the third night of the trial was that of Juana Robinson, which was given six days after the killing. The state did not see fit to place her on the stand and at trial her statement was found in which she attempted to identify appellant as the one she saw at her beverage store in Gautier on November 3, 1977, stating positively that he was at the store between 11 and 12 a.m. on November 3. Again, it is obvious that this was an impossibility under the state's proof in the case.
There is no choice but to hold that the extensive motion of appellant's attorneys for discovery and the court's order were flagrantly violated by the state in not producing the two exculpatory statements. We certainly have to assume that someone representing the state had Acheson's statement when she testified in chief, and that a disclosure of this statement was refused even under the above quoted section of Rule 4.06.
The state, after the statements were in some way discovered the third night of the trial, attempted to bolster Acheson's testimony in rebuttal. It is contended by the state that no reversible error occurred because appellant's attorneys did not handle the matter correctly at that time. It is insinuated that the proper procedure would have been to request a mistrial. Concededly, this could have been done and probably should have been done. Appellant's attorney, however, because of the case built entirely on circumstantial evidence, chose to use the faulty procedure of the state to secure a directed verdict or peremptory instruction because of the highly inconsistent time element during the alleged actions of appellant, which time element was of utmost importance to the state's case.
We need to pause here to point out that different attorneys handled the appellant's appeal to this Court from those who tried the case in the lower court. One of the assignments of error is that appellant did not have effective assistance of counsel at trial. We do not make a specific finding on this assignment and do not reverse the cause for that reason. In the event it should be said that appellant's trial attorneys used the state's misdeeds in a wrong way, the cause would have to be reversed under this Court's rules after the state's flagrant and plain reversible error.[1] We hold that the state's failure to comply with Rule 4.06, the court's order, and the mandates of prior opinions of this Court and the United States Supreme Court, constitutes reversible error. Jackson v. State, 426 So.2d 405, 1983, and not yet reported; Culberson v. State, 379 So.2d 499
(Miss. 1979); Moore v. State, 405 So.2d 97 (Miss. 1981); Bradyv. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
Another assignment of error advanced by the appellant was that the cause should be reversed for failure of the trial court to sustain appellant's motion for change of venue. In our opinion, the evidence presented on this motion merely raised a question to be decided under the trial court's discretion. We now suggest, however, that due to the obvious trial publicity and the publicity that probably will result from this opinion, the trial court should seriously entertain a change of venue for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
[1] Miss.Sup.Ct. Rule 6(b)
No error not distinctly assigned shall be argued by counsel, except upon request of the Court, but the Court may, at its option, notice a plain error not assigned or distinctly specified.
 *Page 405