437 So.2d 19 (1983)
John Albert BOX
v.
STATE of Mississippi.
No. 54105.
Supreme Court of Mississippi.
August 24, 1983.
Jon M. Barnwell, Whitman D. Mounger, Greenwood, for appellant.
Bill Allain, Atty. Gen. by Bill Patterson, Sp. Asst. Atty. Gen., Jackson, for appellee.
EN BANC.
HAWKINS, Justice, for the Court:

I.
At dusk on the evening of July 27, 1981, Ms. Catherine B. Short was robbed at gunpoint in her home in Greenwood, Mississippi. In due course on October 16, 1981, John Albert Box, defendant below and appellant here, together with two others, Robyn Sabrina Russell and Timothy Ray Davis, were charged with armed robbery in a joint indictment returned by the Leflore County Grand Jury. Miss. Code Ann. § 97-3-79 (1972). The proceedings against Box were severed from those against Russell[1] and Davis.[2]
*20 On March 17, 1982, this case was called for trial in the Circuit Court of Leflore County, Mississippi. After hearing all of the evidence and receiving the instructions of the court and the arguments of counsel, the jury on the following day found John Albert Box guilty of armed robbery. As a recidivist, Box was sentenced to life imprisonment without eligibility for probation or parole.
From this conviction and sentence, Box appeals. Because of the State's failure to comply with its obligations under Rule 4.06 of Uniform Criminal Rules of Circuit Court Practice, we reverse.

II.

A.
Shortly after indictment, defendant Box filed a written motion seeking discovery of nearly every aspect of the State's case. He properly invoked the provisions of Rule 4.06 which, in pertinent part,[3] provides as follows:
The prosecution shall disclose to each defendant or to his attorney, and permit him to inspect, copy, test, and photograph upon request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial;
(2) Copy of any recorded statement of the defendants to any law enforcement officer.
Upon a showing of materiality to the preparation of the defense, the court may require such other discovery to defense counsel as justice may require.
Although under the rule it was not necessary, a hearing on Box's discovery motion was held November 19, 1981, some four months prior to the trial of this case. Box's attorney specifically requested:
"A list of all of the State's witnesses having knowledge of the case, along with their addresses."
The State's attorney responded:
"The State has no objection to providing that. We have a list of witnesses which we will furnish him if he has not already been furnished. That's witnesses having personal knowledge, not hearsay knowledge."
Defendant Box also requested production of physical and tangible evidence in order to enable his counsel to examine same. The prosecution interposed no objection and the court noted "You are entitled to that." We do not find the word "photographs" expressly used in defendant's discovery request. On the other hand, the only reasonable construction of the discovery allowed at the November 19 hearing was that the prosecution should produce photographic evidence. We do not understand the State to contest the point here.
At trial the State called as its witness one Michael Waters, the owner of the automobile allegedly used to make the trip from Jackson to Greenwood to perpetrate the robbery. Waters was a witness clearly within the scope of the discovery allowed at the November 19 hearing. His name was not disclosed to the defense until late on the evening before the trial began.
In addition, the State offered into evidence photographs of the Waters automobile. These photographs depicted an automobile similar to that observed on the evening in question by two of Ms. Short's neighbors. The photographs likewise were within the scope of the discovery order but had not been disclosed until a few moments before they were produced at trial. Over the strenuous objection of the defendant, these items of evidence were received and were presented to the jury. Defendant did not, however, seek a continuance or a mistrial.
On this appeal, defendant Box makes the following assignment of error:

*21 "The court erred in admitting into evidence testimony of a witness and photographs which had not been furnished defense counsel in compliance with an order for production."
We find the assignment well taken and dispositive.

B.
The question presented here brings into direct conflict two important interests. First, there is the prosecution's interest in presenting to the jury all relevant, probative evidence. On the other hand, there is the accused's interest in knowing reasonably well in advance of trial what the prosecution will try to prove and how it will attempt to make its proof which, of course, includes the names of persons the State expects to call as witnesses.
This State is committed to the proposition that these conflicting interests are best accommodated and that justice is more nearly achieved when, well in advance of trial, each side has reasonable access to the evidence of the other. See Rule 4.06, supra; Rules 26-37, Miss.R.Civ.P.

C.
The instant controversy surrounds the testimony of the witness, Michael Dean Waters, and the admission of photographs of Waters' automobile. Without contradiction, the automobile used by the robbers was the Waters automobile.
On July 29, 1981, officers of the Greenwood Police Department obtained a statement from Box's accomplice, Timothy Davis, which, in pertinent part, indicated that Russell, Davis and Box were together in Jackson on the day of the robbery and that they borrowed Waters' automobile. In other words, nine months before the trial below, the State knew of Waters and knew that he was a witness who most likely could place Box with Russell and Davis leaving Jackson in Waters' automobile en route to Greenwood on the day of the robbery. In view of the other evidence at trial, such testimony was important to the State's case.[4]
Waters' identity as a prospective witness was not disclosed until the evening before the trial began. Timely and proper objection was made. Nevertheless, Waters was allowed to testify.
When Defendant objected to the State's attempt to introduce this evidence at trial, the prosecuting attorneys were questioned by the trial judge at length. They were asked to give the reason for their failure to disclose the identity of Waters and to allow pretrial examination of the photographs. Both the district attorney and the assistant district attorney were can-did with the court. Until the evening before the trial, they simply were not aware of the indication in the Davis statement that the robbers borrowed Waters' car. Accordingly, they had no actual knowledge that Waters was in a position to testify that he saw Box with Russell and Davis on the day of the robbery leaving Jackson in a car fitting the description given by the eyewitness in Greenwood. The information was available to them in the form of the Davis statement.
Under the facts of this case we believe reversal is warranted. Although we are not hide-bound to reverse every case in which there was some failure by the State to abide by a discovery rule, this case should be reversed and remanded for a new trial. Prosecuting attorneys, as well as defense attorneys, must recognize the obligation to abide by discovery rules. A rule which is not enforced is no rule.
*22 For the reasons stated above, this case is reversed and remanded for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, DAN M. LEE and ROBERTSON, JJ., concur.
ROBERTSON, DAN M. LEE and PRATHER, JJ., specially concur.
ROBERTSON, Justice, specially concurring:

I.
I concur in everything said by Justice Hawkins in his opinion for the Court. I certainly concur in the Court's judgment that John Albert Box's conviction be reversed and that the case be remanded for a new trial on all issues. In my view, however, there is at the core of this case something bigger than the by no means insignificant case of John Albert Box.
This case is one of many. It presents the situation we see repeatedly. Rule 4.06 of our Uniform Criminal Rules of Circuit Court Practice is being diluted daily. Over and over, we see the situation where a timely discovery request is made by the defendant, where the identity of a witness or the existence of physical evidence is not disclosed by the state until the last minute (with a variety of excuses being offered), where the trial judge then gives defense counsel a minimal period of time to talk to the witness or examine the evidence, and the trial proceeds apace.
Emphatically, this is not the way Rule 4.06 is supposed to operate.
With deference and with some temerity, I suggest that this Court ought do more to vindicate the important interests secured by Rule 4.06 and discovery orders which may be entered thereunder  and to assure that discovery requests or orders in criminal cases are taken seriously.

II.
Rule 4.06 has been on the books for over four years now. We have considered many cases arising under it, where discoverable but undisclosed evidence was offered by the state. See, e.g., Overstreet v. State, 369 So.2d 275 (Miss. 1979); Thomas v. State, 377 So.2d 593 (Miss. 1979); Gallion v. State, 396 So.2d 621 (Miss. 1981); and Spots v. State, 427 So.2d 127 (Miss. 1983).[1] And now we have the case of John Albert Box.
My concern is that nothing in our prior cases gives the trial judge any clear guidelines suggesting what he ought do when faced with the sort of situation we confront here: The attempt by one party or the other to offer as evidence testimony, matters, or things which ought to have been disclosed in discovery but weren't. We tell the trial judge he has a certain amount of discretion without telling him how much. We tell him to consider how the defendant may be prejudiced, again without giving much of a clue how much or how little prejudice may require a particular result.
On appeal we have developed an equally ruleless, ad hoc approach to deciding these cases. We inquire as to whether the defendant was prejudiced by the state's failure to disclose discoverable evidence. See, e.g., Gallion v. State, supra, 396 So.2d at 622; Spots v. State, supra, 427 So.2d at 130. Then we affirm or reverse, seemingly willy nilly.
Today's case continues the pattern. While we reverse, the opinion of the Court wholly fails to articulate a principled basis for so doing. Far more important than that, there is little in the opinion of the Court that will give the trial judge any real guidance as to what he ought to do when confronted with such cases in the future. Presumably in a future case which is essentially *23 identical in its facts to this case, the trial judge will refuse to allow the state to use the undisclosed evidence. But suppose he chooses to overrule the defendant's objection, and defense counsel then moves for a continuance, claiming unfair surprise. Nothing in the Court's opinion or in our earlier Rule 4.06 cases tells the trial judge whether he can or ought grant the continuance.
The record reflects that in this case the trial judge let the undisclosed evidence in on the premises that the defendant was not being unfairly prejudiced. I would like to think that today's decision, reversing as it does, would be construed as disapproving the prejudice inquiry altogether. The opinion, however, fails to make that point clear either.
In short, I submit that the state of our cases is sufficiently unhappy and the cutting of corners around Rule 4.06 is sufficiently widespread that we have a responsibility to step in. We have had enough experience. What is happening is apparent to all. I suggest that the only way we can secure enforcement of Rule 4.06 is to provide further clarification regarding the consequences of the state's failure to make discovery  for whatever reason. We should provide this clarification in the form of guidelines that will be fair to both the prosecution and the defense  and will be consistent with the public interest.

III.

A.
Both the prosecution and the defense have important interests at stake in Rule 4.06 cases. Vigorous though fundamentally fair prosecutions are the public's interest. In my view, these interests will be fairly accommodated and served by employment of and adherence to the general guidelines I suggest below. There are, to be sure, an infinite variety of factual contexts in which failure-to-make discovery problems will arise in criminal cases. I therefore put my suggestions in the form of flexible guidelines that ought generally be followed, not rigid rules the letter of which must always be obeyed.
My suggested guidelines are:

First
In cases where the state seeks to offer into evidence that which it ought to have disclosed pursuant to a discovery request but didn't, it is first incumbent upon the defendant to make timely objection. If this be done, the court's initial response should be a directive that the defense be given a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs, etc. The court should not be grudging in this allowance.

Second
If, after examining the evidence involved or interviewing the would-be witness, the defendant is of the opinion that he has been subjected to unfair surprise and that his defense will be prejudiced if the evidence is offered without his having had the opportunity to investigate independently the credibility of the evidence and possible responses thereto, it should then be incumbent upon him to request expressly that the court grant a continuance. In most instances this will necessitate a declaration of a mistrial.[2] In any event, and in such a situation and absent unusual circumstances to the contrary, the trial court ought conditionally grant the requested continuance, at which *24 time the matter is checked back to the state.

Third
If the state is of the opinion that for whatever reason it wants to use the witness or the evidence in its case against the defendant, the order for a continuance must stand. At this point, however, the state should have the election. If the state withdraws its offer of the evidence in dispute and agrees to proceed wholly without use of this evidence, the order for continuance should be withdrawn and the trial should proceed as in the ordinary course.
I would hold that these guidelines ought generally be applied in all cases in which the new evidence has not been disclosed to the defendant more than 48 hours prior to the beginning of the trial. There may be cases where it would be appropriate to apply these guidelines where discoverable but unproduced evidence has been disclosed to defendant more than 48 hours before trial.

B.
There are several salient features of the procedure outlined here.
First and foremost, our concern is with fairness, with avoiding unfair surprise to either the state or the defense. I emphasize that we are dealing with otherwise admissible evidence, with otherwise competent witnesses, where the sole objection is a failure to disclose in response to a discovery request. Under these circumstances, if this defect can be cured, the evidence should be admitted and the case should proceed. I would not adopt a per se rule of inadmissibility of undisclosed evidence. Such is not necessary to the effective enforcement of our discovery rules.
Second, these guidelines would effectively take this Court out of the business of judging ad hoc and without an adequate record whether the defense has been prejudiced, that is, subjected to unfair surprise. This is proper because this Court is not in a position to decide that a tardy disclosure of the witness or evidence has or has not resulted in unfair surprise, or prejudice, to the defendant. This Court has only the cold record to review. That the record does not affirmatively reflect prejudice does not logically demonstrate that there has been none. Where there is prejudice, it more than likely will pertain to matters that will not be reflected in the record. The line of questioning defense counsel failed to pursue because he didn't have time to prepare will not be reflected in the record. The rebuttal witness who could have impeached the state's newfound witness, but who was not found because the defense had no time to get out and search for him, will not be in the record. There are numerous other similar examples of actual prejudice that will necessarily not be disclosed in the record but which the experienced trial lawyer will readily call to mind.
Moreover, there is little value in judicial speculation regarding the probative value or significance of the evidence to the state's case. It should be presumed that, if the state seeks to have the evidence placed before the jury, the state is of the opinion that the evidence is such that it will enhance the chances of conviction. Likewise it should be presumed that the defendant will suffer this form of prejudice from the offer of this evidence.
Third, the decision whether a continuance be sought should be exclusively the defendant's. Here, defense counsel should be required to make a judgment call. For the reasons just noted, defense counsel is in a far better position to make that judgment call than is the trial judge. The trial judge, in his position of neutrality, is not by temperament or role as sensitive to possible prejudice as is defense counsel. It being presumed that the evidence would be prejudicial to the defendant, defense counsel should be allowed to make the judgment whether he wants the trial stopped.
Fourth, these guidelines recognize that, in a great many cases, merely giving defense counsel a recess within which he may interview the newly found witness or examine the newly discovered document is not sufficient to prevent prejudice to the defendant. *25 Defense counsel not only needs the chance to find out what the witness knows and will say on the witness stand. He needs a full and fair opportunity to investigate independently the witness' credibility and veracity. The witness may have some undisclosed motive for wanting to testify against defendant, but the brief recess interview may not disclose that. There may be a dozen other ways to impeach or discredit the witness, if counsel only had time to develop and pursue his leads. These guidelines offer the defendant the same opportunity to prepare a response to the newly discovered witness or other evidence as the law affords the defendant on all other features of the prosecution's case.
I emphasize here that the defendant should not be allowed to have his cake and eat it too. I would not adopt a per se rule of inadmissibility. If on balance defendant is of the opinion that he has been unfairly surprised by the state's new evidence, he ought be required affirmatively to request a continuance. As indicated, defendant ought first have been allowed a reasonable opportunity to examine the newly discovered evidence or to interview the newly discovered witness. At that time, defense counsel must make a decision. The trial may otherwise have progressed to his satisfaction. He may feel that a reasonably favorable jury has been seated. In this case, the two eyewitnesses had failed to identify Box. The prosecuting witness, Ms. Short, not only did not identify Box but stated that there were only two people who participated in the robbery. It was apparent that Robyn Sabrina Russell was not going to testify. For these or other reasons it may have been that, at the time the evidence in question was offered, the Defendant felt on balance he should proceed. He may have concluded that the prejudice resulting from unfair surprise was outweighed by good breaks he had gotten on other aspects of the trial. I do not know, and nothing turns on my speculations. I merely suggest that, as a matter of sound trial tactics, defense counsel, after his recess to acquaint himself with the new evidence, may rationally eschew moving for a continuance.
The defendant's objection when the evidence or witness is tendered at trial should entitle him only to a temporary break in the action, a reasonable opportunity to examine the evidence or to interview the witness  nothing more, nothing less. Where the objection is not followed by a motion for a continuance, the defendant should be presumed to have made his judgment call and to have decided on balance that his chances are better if the case proceeds, rather than giving the state the opportunity to start afresh. Where no motion for a continuance is made, the Rule 4.06 issue should be deemed waived for purposes of appeal.
Finally, the general guidelines suggested above would realistically and effectively tell the state that its obligation to conform to discovery orders must be taken seriously.[3] The state ought not be heard to say "we only discovered this evidence last night", or "the defendant should have known about this witness all along anyway" or, "this evidence is merely cumulative or corroborative", or the like.[4]
*26 Summarizing, if it be found that the state has for whatever reason failed to conform to a proper discovery request, after reasonable recess and opportunity for the defendant to examine the evidence or witness, defendant should be granted the right to request a continuance. The court should honor such a request, subject only to the state's judgment that the offer of the new evidence be withdrawn. If the district attorney in the exercise of his judgment determines to withdraw his offer, this should wholly vitiate the necessity for continuance or a new trial. Under such circumstances, the trial court should rule that the evidence tendered by the state, having been objected to by the defendant, is inadmissible. The trial should resume and proceed as in other cases where objections to offered evidence may have been sustained.

C.
I emphasize that there are two important checks against defense abuse built into these guidelines. I recognize the instinct of defense counsel to avoid trial as long as possible, to abort the trial once it has begun. There will no doubt be many occasions where, in the face of theretofore undisclosed evidence being offered by the state, the defense nevertheless elects to go forward. Where the evidence, in the eyes of the defense, is not particularly harmful and where otherwise the trial has gone well, astute defense counsel may for tactical reasons decide that a continuance would be contrary to his client's interest.
On the other hand, assume that things are going badly for the defendant and that his lawyer is looking for any possible way to obtain a mistrial. In that situation, under the guidelines proposed here, the defendant will surely request a continuance. But the state would be given complete power to circumvent defendant's maneuver by electing not to use the undisclosed evidence. It should not be overlooked that the prosecution has the power to avoid the Rule 4.06 dilemma by simply complying with the discovery request.
When a discovery request is made in a criminal case, the prosecution has a duty to be diligent in compliance. It has a continuing duty to supplement its response to discovery as new evidence becomes available. Suffice it to say that nothing in Rule 4.06 or in any circuit judge's order granting discovery deprives the prosecution of the opportunity to go to trial and proceed vigorously with all relevant, probative evidence at its disposal. What  and all  we ought expect is that the prosecution act diligently and fairly.

IV.
Having said all of this, I concur in the judgment of the Court that John Albert Box's sentence be vacated, his conviction reversed, and his case remanded for a new trial on all issues. At this new trial, the State, of course, will be free to use the disputed evidence, for the defense has now had fair notice of same.
DAN M. LEE and PRATHER, JJ., join in this opinion.
NOTES
[1] Russell had been convicted of armed robbery and sentenced to serve a term of 20 years in the Mississippi State Penitentiary. See Russell v. State, 422 So.2d 749 (Miss. 1982, unpublished opinion).
[2] Davis has entered a guilty plea to the reduced charge of robbery and has received a five-year suspended sentence.
[3] Rule 4.06 was amended effective October 26, 1982. Here, of course, we are concerned with the rule in the form in which it appeared at the time of trial. Nothing in the amendment alters the parts of Rule 4.06 construed here.
[4] Waters was the only independent witness who placed Box with Davis and Russell before the robbery. According to Waters on the morning of the robbery Davis called and asked to borrow his car. Waters told Davis to meet him at the parking lot of Frito-Lay in Jackson, Waters' place of employment. Davis arrived at Frito-Lay with two companions, Robyn Russell and a man Waters identified in open court as being John Albert Box. Waters delivered his car keys to Davis. The three left Waters at about 3:30 p.m. on the day of the robbery. Greenwood is less than a two-hour drive from Jackson. Waters' car matched the description given by the Greenwood witnesses Palmertree and Parker.
[1] There are a number of other Rule 4.06 cases decided by this Court. See Bracy v. State, 396 So.2d 632 (Miss. 1981); Turner v. State, 415 So.2d 689 (Miss. 1982); Young v. State, 420 So.2d 1055, 1059-1060 (Miss. 1982); Jackson v. State, 426 So.2d 405 (Miss. 1983) and Hooten v. State, 427 So.2d 1388 (Miss. 1983). In those cases, unlike the case at bar and those cited above, the undisclosed evidence was not received into evidence against defendant at trial.
[2] Here the trial judge should be vested with considerable discretion. He should look at the nature and form of the evidence in dispute. He should give substantial deference to the reasonable representations of counsel concerning the amount of time necessary for defendant to prepare to meet the new evidence. He should consider how much time is left in the term and, of course, the state of his trial docket. He should consider any other factors that seem relevant. If it be feasible, and consistent with the interests and policies recognized and sought to be vindicated herein, to recess the trial and continue in the next day or two before the same jury, the trial judge may so order. If this is not practical, the trial judge should declare a mistrial and schedule a new trial at the next convenient date.
[3] Discovery under Rule 4.06 is a two way street. When the defendant withholds discoverable evidence which, under Rule 4.06, he was required to produce, I would urge that these same guidelines be made applicable.
[4] Another familiar excuse is that the police had the information but the prosecuting attorneys were not aware of it. This will not do. When police officers have been in possession of discoverable information for nine months, the State is entitled to no consideration because the District Attorney or his assistant did not look at the file until the night before trial. The State, in the present context, is a team consisting of the attorney, the law enforcement officers of the jurisdiction in which the case is brought, all other cooperating law enforcement officials  municipal, county, state or federal, the prosecution witnesses, and any other persons cooperating in the investigation and prosecution of the case. What is known or available to any one or more is deemed known by or available to the State. All are collectively "the State" for present purposes. See United States v. Deutsch, 475 F.2d 55, 57 (5th Cir.1973). When responding to requested or ordered discovery under Rule 4.06, the State, as here collectively defined, should disclose all information it has plus all information it could obtain with due diligence or upon reasonable inquiry. And, discovery responses should be supplemented when, as trial approaches, (a) the information previously furnished appears incomplete, misleading or downright incorrect or (b) the State comes into possession of new information within the scope of the discovery request as allowed. Gallion v. State, 396 So.2d 621, 622, 624 (Miss. 1981).