HAWKINS, Presiding Justice,
dissenting:
I respectfully dissent.
In my view reversible error was committed in permitting the witness Tracy Pope to testify as was done in this case.
When the State has been requested under Rule 4.06 of the Criminal Rules to furnish the names of witnesses they propose to offer in chief at trial, it can occasionally happen, as may have occurred in this case, the prosecution itself does not learn the identity of the witness until the trial is in progress. In such circumstances the prosecution obviously cannot be faulted for failure to disclose the identity prior to trial.
*377 The prosecution is, however, under a solemn duty, upon discovering the identity of such witness to promptly notify defense counsel and the circuit judge. If there is any objection, the circuit judge should then conduct a hearing in chambers to determine the appropriate way to handle the matter.
While I believe the procedure outlined by the majority will be helpful in most cases, it does not fit this case.
Trial in this case began on Monday, July 23, 1984. The jury voir dire lasted two days. During the questioning of the jury, defense counsel asked the prospective jurors about certain witnesses which the State intended to call, and if any of the jurors knew them. The record reveals that defense counsel asked one of the prosecuting attorneys (out of the hearing of the jury, however) if the State intended to call a Mrs. Tracy Pope.
BY MR. TUCKER:
Okay, the last one — (Aside to Ms. Whitten) is this Tracy Pope? Is that beared [sic] out yet? Are you going to use her?
BY MS. WHITTEN:
Nunh — uh. [sic] [Personal remarks between Ms. Whitten and Mr. Tucker out of hearing of reporter.]
BY MR. TUCKER:
Okay. Would you mark that in the record: that they are not going to call Tracy Pope.
(Vol. Ill, p. 548.)
In his opening statement to the jury panel, defense counsel asked the jury to consider whether Cole in fact was even present at this particular place at this particular time.
I think the evidence will show to you without question that the State’s case is going to fail miserably in placing West Cole out there.
And further:
They don’t have any witnesses who saw West Cole out there.
(Vol. IV, 576-577.)
On Thursday, July 26, the State called Mrs. Pope as a witness, and defense counsel objected to her testifying. The record contains the following discourse:
BY MR. TUCKER:
If it please the Court, we object to her testifying to anything at this time. Pursuant to our discovery her name was not provided in our witness list. We have not had time to interview her. We've just this morning been advised that she was to testify, and we were advised as late as yesterday that she was not to testify. We’d like permission to interview her prior to any testimony [sic] on her part.
BY MS. WHITTEN:
Your Honor, for the record we’d like to state that the State only discovered the existence of this witness, although we had been attempting to locate her the entire time since this crime occurred, her existence and her name were located and ascertained by the State only two days ago, at which time during the voir dire we informed the Defense Attorney that if we could locate her we were going to put her on. Those efforts continued to prove unsuccessful, at which time we informed him of that and we would not call her. And I told him as soon as we found out that she would be available that we intended to put her on the stand, and I also gave him the veritable substance of her testimony on direct. So I don’t think that he can claim any unfair surprise.
BY MR. TUCKER:
If the Court please, we’d like to interview her prior to her testimony.
BY MS. WHITTEN:
Your Honor, we state for the record also that under Discovery Rule 4.06, Defense Attorney is only entitled the names and address of witnesses, and there’s absolutely no compulsion of the Court which can force this witness to be interviewed by opposing counsel.
BY THE COURT:
I understand that; but of course I can make her available. My question is, was *378 the witness present this morning in the Courthouse?
[By Mr. Peters:]
Q. When did you get here, Tracy?
A. About 9:30.
Q. And as soon as you came in, what happened?
A. You interviewed me.
Q. And then what happened as soon as we had the first chance? You came up here?
A. We came up here.
Q. All right.
BY THE COURT:
Ladies and Gentlemen of the Jury, if you would step to the jury room at this time. [The jury was excused, and the following proceedings were had in their absence:]
BY MR. PETERS:
If it please the Court, this is her husband, Gary Pope. At the time I talked with her, he was present while I was talking her, and I'd like the Court to advise her that he can be present when the Defense Attorney talks to her; that I can be present when the Defense Attorney talks to her; or that she doesn’t have to talk to him, whatever her choice is. BY THE COURT:
That’s correct.
BY MR. TUCKER:
Who is her husband?
BY MR. PETERS:
Here.
BY THE COURT:
The Defense Attorney would like to talk to you prior to your testifying. You may talk with him if you choose to do so. You may have anyone present with you at the time you talk to him if you would like to do so. If you choose not to talk with him, that’s your prerogative. The Court is not going to instruct you one way or the other. I’m just going to make you available to Defense Attorney, and it’s up to you to what you want to do.
BY MRS. POPE:
I’d rather not.
BY MR. TUCKER:
Q. Would you — let me ask you this. Would you mind if you and your husband and I could go in this room back here and just talk for a few minutes so I can determine exactly a few things of why I haven’t talked to you before now or why you haven’t been around, the same things that the District Attorney obviously talked to you about? Would you mind doing that?
A. No.
BY MR. TUCKER:
[To Mr. Pope] Do you mind if she does that? I mean you could be with her.
[Husband nodded.]
She’s consented, Your Honor.
BY THE COURT:
You can go in that office there. [Mr. and Mrs. Pope and Mr. Tucker went into conference room.]
BY MR. PETERS:
Would you let the record reflect she’s talking to him.
[Trial was recessed briefly, and then continued as follows:]
BY THE COURT:
All right, let the record reflect that Defense Counsel has now had an opportunity to personally interview this witness before allowing the witness to testify-
If you would, ask the jury, Mr. Bog-gan, to return to the jury box.
BY MR. TUCKER:
We would make another objection when the jury gets back.
[The jury returned, and the following proceedings were had in their presence:]
BY THE COURT:
All right, Mr. Tucker, you said you object?
BY MR. TUCKER:
If it please the Court, we renew our objection previously made as to this witness testifying. We were not provided with any information or had time to prepare for any defense to her testimony. The State has known about this witness all week, and we should have been pro *379 vided prior notice of this so we could prepare for it; and we therefore claim surprise.
BY MS. WHITTEN:
Your Honor, at this time for the record we would renew our response of last time as to the time and dates Defense Counsel was informed of this, and would state that the first time anything even occurred approximately several months ago about the issue of whether there was a woman present, it appears in the confession of West Cole.
BY THE COURT:
Also let me ask you, did you indicate that if you found the witness you would call the witness?
BY MS. WHITTEN:
Yes, sir, we did. And I did tell Mr. Tucker the exact nature of her direct testimony. I’d also like the record to reflect that he has interviewed this witness for some twenty to twenty-five minutes.
BY MR. TUCKER:
When did you say you found her?
BY MS. WHITTEN:
Yesterday.
BY THE COURT:
All right, objection will be overruled. The witness may testify.
(Vol. V, pp. 945-950.)
During her testimony Mrs. Pope said that law enforcement officers first approached her on the previous Tuesday morning around 10:30 a.m. They asked her if she could identify Cole, and she gave them a description, but she was not sure she could identify him.
The officers returned on Wednesday afternoon around 6:30 p.m., at which time she identified Cole’s photograph from a group of pictures.
Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice states in pertinent part:
The prosecution shall disclose to each defendant or his attorney, and permit him to inspect, copy, test, and photograph upon and request and without further order the following:
(1) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial. [Emphasis added]
This Court has had to address Rule 4.06 violations in various factual settings. We have reversed in the following cases:
Morris v. State, 436 So.2d 1381 (Miss.1983), and Tolbert v. State, 441 So.2d 1374 (Miss.1983), failure to furnish defendant with copies of his of statements.
Harris v. State, 446 So.2d 585 (Miss. 1984), failure to produce pistol used in shooting for inspection by defense.
Fuselier v. State, 468 So.2d 45 (Miss.1985), failure to furnish defendant copy of statement of companion in commission of crime.
Barnes v. State, 471 So.2d 1218 (Miss.1985), failure to furnish defendant with copy of statements given to officers by principal state witness.
Hentz v. State, 489 So.2d 1386 (Miss.1986), refusal to furnish non-exculpatory statement. Cooley v. State, 495 So.2d 1362 (Miss.1986).
Foster v. State, 493 So.2d 1304 (Miss.1986), failure to furnish defendant with copy of crime lab report, even though no showing of relevancy to case.
It goes without saying that no defendant will be permitted to assert a Rule 4.06 violation when he failed to make the appropriate request therefor.
The closest case factually to this case is Box v. State, 437 So.2d 19 (Miss.1983). In investigating the case, one of the accomplices told police officers that they used Michael Dean Water’s automobile to commit the robbery. No one followed up on this lead until the evening before trial when the prosecuting attorneys learned of the importance of Waters’ testimony. The next day, over the defense objection, Waters testified as a witness for the State. In reversing, we stated, p. 21:
The question presented here brings into direct conflict two important interests. First, there is the prosecution’s interest in presenting to the jury all relevant, probative evidence. On the other *380 hand, there is the accused's interest in knowing reasonably well in advance of trial what the prosecution will try to prove and how it will attempt to make its proof which, of course, includes the names of persons the State expects to call as witness.
This State is committed to the proposition that these conflicting interests are best accommodated and that justice is more nearly achieved when, well in advance of trial, each side has reasonable access to the evidence of the others. See Rule 4.06, supra.
* * * * * *
Under the facts of this case we believe reversal is warranted. Although we are not hide-bound to reverse every case in which there was some failure by the State to abide by a discovery rule, this case should be reversed and remanded for a new trial. Prosecuting attorneys, as well as defense attorneys, must recognize the obligation to abide by discovery rules. A rule which is not enforced is not rule.
Since Box we have consistently reversed cases in which the prosecution has violated Rule 4.06.
As in Box, some empathy can be felt for the position in which the State found itself. Clearly, in this case the State did not know months ahead of time that Mrs. Pope would be a material witness in this trial.
Yet the State was hardly blameless. They were not compelled to act as they did.
During voir dire the State specifically told defense counsel that Mrs. Tracy Pope would not be used as a witness.[1]
Following this, in his opening statement defense counsel told the jury the State had no eyewitnesses.
Then, on Thursday morning, Mrs. Pope suddenly appeared. This left a rather wide exposure to the flanks of the defense’s case. The defense could not minimize the damage this did to Cole’s case; it damaged his counsel’s credibility as well.
At the very minimum the State could have notified Cole’s counsel immediately upon learning that Mrs. Pope would be a witness. This notice would have given the circuit judge the opportunity to consider the matter in chambers before the State offered her testimony in open court.
The State might also have informed defense counsel that Mrs. Pope would not be called as a witness in chief, but that she would be called in rebuttal if Cole pursued his ailbi defense before the jury. The Rule makes no requirement of the State to furnish the names of rebuttal witnesses. While Mrs. Pope’s testimony would ordinarily be considered as part of the State’s case in chief, under these peculiar circumstances, the State could have asked the circuit judge to permit them to call her as a rebuttal witness if Cole pursued an alibi defense. In this event, at least the defense would not have been surprised and the defense could have avoided the untenable situation in which it found itself.
I would hold, therefore, that the trial court committed reversible error in permitting Mrs. Pope to testify over the defense counsel’s objection.
I would not hold that in every case the State is restricted to using only witnesses it discloses to the defense prior to trial. There may be cases in which the State can properly use a witness whose identity the State suddenly discovers during the course of trial. But the State’s acts must not unfairly prejudice the accused.
In the case at bar, the State discovered a prospective witness was material to the State’s case, yet they failed to disclose the witness’s name to the defense when the State knew the witness’s identity. Under these circumstances I would hold the State should, at the very minimum, immediately notify defense counsel and give him an opportunity to interview the witness as well. Then, before offering such person as *381 a witness to the jury, the circuit judge should be informed of the situation. The judge should then conduct a hearing in chambers and determine whether the defense will be prejudiced because of the failure to know of the witness’s identity, and did not have an opportunity to interview the witness prior to trial. If the circuit judge satisfies himself that the mere delay itself in learning this person’s identity would cause no harm, he may in his discretion permit the State to offer the person as a witness before the jury. Alternatively, if the judge finds the defendant will be unfairly prejudiced by the State’s failure to identify the witness, the judge should not allow him to testify.
In this case, no such precautions were followed, and in my view, the judge obviously should have prohibited the State from offering Mrs. Pope’s testimony in the State’s case in chief. Indeed, it is clear that the State did everything they could to prevent defense counsel from interviewing Mrs. Pope at all before she took the witness stand.[2]
From the record it appears the defense was caught completely by surprise with a devastating witness the State had represented would not appear. Yet the majority places the entire onus on the defense, faulting it for not asking for a “continuance”. What does the majority mean by a “continuance”? Until the next term of court? Or, does the majority mean a “recess”? A recess would have done the defense no good in this case. A continuance in the usual sense of the term (as we use it) would have meant a mistrial in this case.
However laudable our aim, we cannot set forth precise rules of procedure to fit every case of discovery violation. Because the defense failed to follow a precise formula which would have been useless in this case, we affirm. We have gagged on some rather insignificant gnats to reverse for Rule 4.06 violations, notably Foster v. State, supra. Here we swallow a camel to affirm.
A vital concern of the judiciary is a fair and even-handed trial, even for the most odious defendant. Otherwise, trials are a mockery.
I would reverse on this assignment.
I am also of the view that defense counsel should be permitted to argue before a jury the credibility of a confession. Wilson v. State, 451 So.2d 724, 726 (Miss.1984). The record reveals on this assignment, however, that all the circuit judge told defense counsel was to stay within the record. He did not sustain the State’s objection to the argument. (Vol. VII, pp. 1198-1199)
I agree with the majority that as to any other errors, they are procedurally barred.
SULLIVAN, J., joins this opinion.

. While Mrs. Pope testified she was not seen by the officers until Tuesday morning, July 24, 1984, apparently from somewhere the prosecution and the defense had some information she was a possible witness. In any event, the defense counsel was led by the prosecution to believe she would not be called as a witness.

. We have also frowned upon State’s counsel attempting to impede defense counsel talking to a tried witness. Gallion v. State, 396 So.2d 621, 624 (Miss.1981).