KITCHENS, Justice,
dissenting:
¶ 27. The majority rejects Jenkins’s arguments concerning the diary, treating the issue as a discovery violation. I agree that there can be no discovery violation if a witness testifies at trial about a matter previously unknown to either party; but the absence of prior knowledge does not prohibit the trial court from granting appropriate remedies to a disadvantaged party. The trial court did not consider Jenkins’s arguments that V.R.’s testimony was not a simple matter of an alleged “discovery violation.” Thus, the wrong legal standard was applied to these arguments, which denied the defendant any means of assessing and responding to the evidence against him. Because the majority opinion adopts the same reasoning as the trial court, I respectfully dissent and would reverse the conviction and remand the case for a new trial.
¶ 28. The majority’s characterization of the defendant’s objection is misleading. Maj. Op. 7-8. The opinion says that Jenkins claimed a discovery violation, yet the record shows that, while his counsel did initially characterize it that way, this was simply his immediate impression. After V.R. mentioned the diary, Jenkins’s attorney immediately objected and requested a bench conference. His first argument was based on a perceived discovery violation, claiming that V.R.’s reference to an entry in her diary was prejudicial because it corroborated her recollection of a particular date. When the prosecuting attorneys replied that they did not have or know about a diary, defense counsel did not accuse the prosecuting attorneys of being dishonest with the court. According to Jenkins’s attorney, his objection to a discovery violation was simply an initial impression based on “the way the question was asked.” He did not contend that he had been “blasted with something that’s not in discovery,” but only said “that was my initial concern.” Maj. Op. 8. As discussed below, defense counsel made many arguments before the trial court, and none of his requests for relief was premised on *553 the prosecuting attorneys’ prior knowledge.
¶ 29. In its analysis, the majority cites Mills v. State, 813 So.2d 688, 692 (Miss. 2002), a case involving a State’s witness who did not come forward until the trial was underway. Maj. Op. at 10. The opinion correctly recognizes that Jenkins’s case is analogous to Mills in that neither party was shown to have known that V.R. may have kept a diary related to her abuse; however, there is no further discussion of the case.
¶ 30. In fact, the Mills opinion supports Jenkins’s argument, for this Court held that, when new facts are revealed during trial, a trial court must consider a party’s request for Ror-like remedies, even when there is no discovery violation. Mills, 813 So.2d at 692 (citing Box v. State, 437 So.2d 19 (Miss.1983)). See also URCCC 9.04 (adopting the suggested procedures for alleged discovery violations as set forth in Justice Robertson’s specially concurring opinion to Box, 437 So.2d at 22-26).
¶ 31. In that case, a woman approached one of the prosecutors during trial and said that Mills had confessed to her that he had committed the crime. Mills, 813 So.2d at 691. The woman came forward with this new information during the State’s cross-examination of the defendant and after the State had presented its case in chief. Id. When Mills denied having any conversation with the woman about the alleged crime, the prosecutor immediately asked that the jury be excused. Id. With the jury out, the prosecutors informed the court and the defense of the new development, and said that they planned to call her as a rebuttal witness for impeachment purposes. Id. The trial court granted a recess to allow defense counsel to interview the newly discovered witness. Id. When the court reconvened, the defense attorney objected to her testimony, arguing that he had not had time to prepare. Id. The attorney did not offer anything other than this generic statement, and he did not request a continuance. Id. at 692. The trial court permitted the witness to testify for the State on rebuttal. Id. at 691.
¶ 32. On appeal, Mills argued that the woman’s testimony was improperly admitted because she had been present in the courtroom during portions of the trial and could have learned about all of the witnesses’ testimony through her family members who had heard all of the State’s witnesses. Id. at 692. Mills also argued that he was denied the opportunity to develop evidence for surrebuttal. Id. (citing Smith v. State, 646 So.2d 538, 543 (Miss.1994) (discussing the rule that when the State is allowed to present rebuttal evidence, the defense must be given the opportunity to reply by surrebuttal)).
¶ 33. The Court rejected these arguments by applying the principle announced in Box “that the accused has an interest in knowing reasonably well in advance of trial what the prosecution will try to prove and how it will attempt to make its proof.” Id. (citing Box, 437 So.2d at 21). The Court summarized the guidelines outlined in Justice Robertson’s specially concurring opinion (and as adopted in Rule 9.04 of the Uniform Rules of Circuit and County Court Practice). Id. Applying these guidelines, this Court found that the trial court had protected the defendant’s interest concerning the new evidence. Id. The Court explicitly recognized that the State’s lacking prior knowledge was not a bar to relief:
Unlike Box, this is not a case where the prosecution had knowledge that Veronica was a witness before trial began. The trial judge properly determined that there was no discovery violation. The prosecution did not withhold the *554 new evidence and informed Mills and the trial court as soon as the new evidence was discovered. However, the Box guidelines are still appropriately considered when a trial court is presented with new evidence at trial.
Id. (emphasis added). The Court held that Mills’s interests were protected because he was allowed to interview the witness, the trial court did not restrict his cross-examination of the witness, Mills did not request a continuance, and there was nothing in the record (or argument before the trial court) indicating that Mills was prejudiced by the testimony or that he needed more time to develop his defense. Id.
¶ 34. Mills’s reasoning follows the rule that the State has a continuing duty to supplement discovery, and the timing of the prosecution’s knowledge is immaterial. “That the prosecution fails to unearth certain evidence until the last minute hardly eviscerates the prejudice to a defendant caught unaware, nor the necessity for reversal where the circuit court denies the defense request for a reasonable continuance.” West v. State, 553 So.2d 8, 16-17 (Miss.1989) (citing Cole v. State, 525 So.2d 365 (Miss.1987); Stewart v. State, 512 So.2d 889, 891-92 (Miss.1987); Foster v. State, 484 So.2d 1009, 1011 (Miss.1986)).
¶ 35. The distinction in Jenkins’s case is the trial court’s determination that the prosecuting attorneys did not learn about the diary until their witness testified at Jenkins’s trial. However, I cannot fathom any logical reason why their lack of advance knowledge would affect Jenkins’s right to investigate the existence and/or contents of the diary. The legal authority governing the State’s duty to disclose is guided by the principle that the accused must have a meaningful opportunity to defend against the charge and that one’s right to challenge the State’s evidence is inherent to the concept of a fair trial. Applying Mills and other supporting authority, the trial court erred in refusing Jenkins the means to investigate V.R.’s claimed written recording concerning the charges for which he was on trial.
¶ 36. Furthermore, Jenkins’s attorney correctly informed the court that the law imputes to prosecuting attorneys the knowledge of other State actors involved in the criminal investigation. Quoting Justice Robertson’s concurring Box opinion, this Court has held that the “State” is not limited to the individual prosecuting attorneys, but “is a team consisting of the attorney, the law enforcement officers of the jurisdiction in which the case is brought, all other cooperating law enforcement officials — municipal, county, state or federal, the prosecution witnesses, and any other persons cooperating in the investigation and prosecution of the case. What is known or available to any one or more is deemed to be known by or available to the State.” King v. State, 656 So.2d 1168, 1174 (Miss.1995) (quoting Box, 437 So.2d at 25 n. 4 (Robertson, J., concurring)). Therefore, the prosecuting attorneys’ lack of knowledge is not a bar, if other members of the State’s prosecution team had knowledge of a diary. We do not know the answer, for the trial court refused Jenkins any means of discovering the answer.
¶ 37. Mills ultimately found no reversible error because the defendant had not requested a continuance and had not demonstrated that the trial court’s attempts to cure any possible prejudice were insufficient. By contrast, Jenkins’s attorney thoroughly and astutely argued his position with support from relevant facts and legal authority. He pointed out that, without a chance to review the writing, or to discover if it existed, he would not know what relief was appropriate, noting that the possible remedies could range from a *555 mistrial to a simple limiting instruction to the jury that they should disregard the statement.
¶ 38. As for possible prejudice, Jenkins gave a convincing argument, despite his being denied the opportunity to discover anything about the victim’s claim that she knew the specific date from her diary. Like many indictments involving sex crimes against minors, the charged crimes were alleged to have occurred between July 1, 2007, and August 5, 2007. Jenkins’s attorney argued the obvious: establishing an alibi for a specific date would have been significantly easier than recounting his whereabouts during an entire month. In fact, the heading to Issue One in Jenkins’s brief reads, “the trial court erred when it failed to compel the State to produce the alleged victim’s diary after she referred to it for the first time at trial when stating a date certain for one of the alleged offenses and different time span for the incident(s).” Notably, the record indicates that an alibi defense was contemplated in a report from a court-ordered mental evaluation finding Jenkins competent to stand trial. Concerning his ability to assist in his defense the report states, “[w]hen asked what he needed to do in order to help his lawyer prepare for his case, he replied, ‘Tell where I was at.’ ”
¶ 39. The majority opinion also accepts the trial court’s finding of no harm because the State did not intend to seek introduction of the diary into evidence. However, as Jenkins’s attorney explained, the diary itself was not the objectionable evidence; instead, it was V.R.’s testimony that she was able to remember a certain date because she had made a written recording.[3] Under the Mississippi Rules of Evidence, and based on the transcript, the State would not have been permitted to admit the diary into evidence. See M.R.E. 612 (material used to refresh witness’s testimony may be placed into evidence by adverse party). See also M.R.E. 803(5) (if admitted, a recorded recollection “may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party”). Rule 612 provides,
If a witness uses a writing, recording or object to refresh his memory for the purpose of testifying, either (1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing, recording or object produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce into evidence those portions which relate to the testimony of the witness.
Even though the rule refers to the trial judge’s discretion, the trial court did not believe production was an option.
¶40. Finally, I respectfully disagree with the majority’s speculating that “without having to risk eliciting damaging testimony regarding the diary’s contents, Jenkins still could have questioned V.R. during cross-examination about whether she had ever discussed a diary with the prosecution or an investigator before trial, but chose not to.” Maj. Op. n. 2. The possibility of eliciting inculpatory evidence cannot be so easily dismissed. Defense counsel would be remiss in cross-examining a child witness about a diary allegedly written when this particular child was as young as five years old, and “[cjommon sense suggests that [a child’s] testimony be viewed with caution,” House v. State, 445 So.2d 815, 827 (Miss.1984) superseded on other grounds by M.R.E 702. He *556 should have been allowed to question the victim about the diary, outside the presence of the jury. This would have given the defense an opportunity to develop valuable information concerning V.K.’s claims that she had made written recordings about her abuse.
¶ 41. For similar reasons, the defense attorney was justified in suspecting a discovery violation regarding the diary. V.R.’s statement that she had written the date in her diary immediately followed the prosecutor’s question, “[w]hy do you remember that day so specifically?” It would not have been unreasonable to assume that the attorney expected a specific answer. The prosecution seemed well-prepared for trial, and the attorneys were intimately familiar with facts of the case. Jenkins’s attorney could reasonably assume that the prosecutor would not have asked a question without anticipating the answer. It is a simple precept of good trial practice that trial counsel should never ask a question to which he or she does not know the answer.
¶42. As reflected in the defendant’s arguments at trial and on appeal, the issue is not a simple matter of discovery. The error raised on appeal goes to the very heart of what it means to have a fair trial, for this defendant was denied any means to assess testimony which significantly supported the State’s case against him. Because the defendant was handicapped in his ability to defend himself, I must respectfully dissent and would reverse the conviction and remand for a new trial.
KING, J., JOINS THIS OPINION.

. In closing arguments, the State argued that the abuse had occurred during the time span listed in the jury instructions (and the indictment), referencing V.R.’s testimony that she could remember the abuse occurring on a specific date, July 16.