LEE, P.J.,
 

 for the Court.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 1. Sarah Lynn Hudspeth was driving on Sport Watkins Road in Kemper County at approximately 10:20 p.m. on December 27, 2006, when her car collided with a
 
 *602
 
 vehicle being driven by Victoria Edwards. Edwards was deceased by the time the emergency responders arrived. Hud-speth’s blood-alcohol content after the accident was .24 percent, well above the legal limit of .08 percent. Miss.Code Ann. § 63-11-30(1) (Supp.2008).
 

 ¶ 2. Hudspeth was convicted of vehicular manslaughter while driving under the influence (DUI) by a jury in the Circuit Court of Kemper County and was sentenced to twenty years in the custody of the Mississippi Department of Corrections with fourteen years suspended and five years of supervised probation. Hudspeth was also assessed a fine of $2,000 and restitution in the amount of $7,650 to be paid to Edwards’s family for funeral costs. Hudspeth filed for a judgment notwithstanding the verdict (JNOV) or, in the alternative, for a new trial, which was denied by the trial court.
 

 ¶ 3. Hudspeth now appeals, asserting the following issues: (1) the blood-alcohol-content test results were invalid; (2) the State failed to prove beyond a reasonable doubt that the accident was the cause of Edwards’s death; (3) the trial court erred in allowing irrelevant opinion evidence; and (4) the trial court erred in denying her motion for a JNOV. Finding no error, we affirm the conviction and sentence.
 

 DISCUSSION
 

 I. ADMISSION OF HUDSPETH’S BLOOD-ALCOHOL CONTENT
 

 ¶ 4. Hudspeth argues that the results of the Intoxilyzer 8000 breath test should not have been admitted into evidence because Deputy Greg Campbell of the Kemper County Sheriffs Department failed to continually observe her for twenty minutes before administering the test and because the State failed to present proof that Deputy Campbell was certified to administer the test on the date it was performed.
 

 ¶ 5. “The standard of review regarding the admission or exclusion of evidence is abuse of discretion.”
 
 Morris v. State,
 
 963 So.2d 1170, 1175(¶ 15) (Miss.Ct.App.2007). “[A]bsent an abuse of that discretion, the trial court’s decision will not be disturbed on appeal.”
 
 McCoy v. State,
 
 820 So.2d 25, 31(¶ 15) (Miss.Ct.App.2002).
 

 A. Did Deputy Campbell comply with the required twenty-minute observation period before administering the Intoxi-lyzer 8000 test?
 

 ¶ 6. According to the Mississippi Department of Public Safety’s guidelines and the Intoxilyzer 8000 Implied Consent Policies and Procedures manual, a twenty-minute observation period is required immediately before a breath sample is taken. The glossary to this manual defines observation period as follows: “A period during which the person being tested has been observed to determine that he has not ingested alcohol or other fluids, regurgitated, vomited, eaten, smoked, or placed anything into his mouth in the 20 minutes immediately prior to the collection of a breath sample.”
 

 ¶ 7. Deputy Campbell testified at the hearing that he arrived at the accident scene at approximately 10:26 p.m. Another deputy, who was already on the scene, told Deputy Campbell that he was friends with the family of one of the parties involved in the wreck and asked Deputy Campbell to take over the case. When Deputy Campbell approached Hudspeth to ask for her driver’s license, she was being attended to by the fire department. The fire chief was attempting to calm her down and checking her for injuries.
 

 ¶ 8. Deputy Campbell observed the strong odor of alcohol on Hudspeth and had to assist her to his patrol car because she could not walk a straight line on her
 
 *603
 
 own. Hudspeth admitted to drinking “a couple” of beers and agreed to submit to a breath test. Deputy Campbell testified that at 10:31 p.m. he ran Hudspeth’s car tag while she was looking for her purse. In his written report, he stated that he left the accident scene at approximately 10:40 p.m. and drove Hudspeth to the jail. A female fire chief rode with Hudspeth in the back of Deputy Campbell’s patrol car. The fire chief was instructed to observe Hudspeth and not to allow her to smoke or put anything in her mouth. The start time, which reflects when Deputy Campbell turned on the machine, on the Intoxi-lyzer 8000 was 10:46 p.m. He typed 10:31 p.m. into the machine as the beginning time for the observation period. Hudspeth gave breath samples at 11:00 and 11:02 p.m.
 

 ¶ 9. Prior to trial, a hearing was held on Hudspeth’s motion to suppress the results of the Intoxilyzer 8000 test. After hearing the testimony of Deputy Campbell and arguments by the attorneys, the trial court ruled as follows:
 

 The observation period as defined by the glossary terms of the Intoxilyzer 8000 does require an officer to observe an individual before he takes a test and observe that that person had not ingested alcohol' — I don’t think there’s any question about that here — or other fluids. I don’t think there’s any question about that. She did not regurgitate or vomit in the car. She didn’t eat anything. She didn’t smoke anything. And he’s observing her with a Fire Chief there in the backseat with her. And his testimony here is clearly that she didn’t place anything in her mouth during that 20 minutes prior to the test and the sample being taken at 11:00.
 

 ¶ 10. We find that the trial court did not err in denying Hudspeth’s motion to suppress. Deputy Campbell testified that he combined his observation time with the prior officer’s and the fire chiefs observation times, which totaled an observation time of approximately twenty-nine minutes. Therefore, even though Hudspeth was not under the constant observation of Deputy Campbell, she was being observed by another deputy and the fire chief when he was unable to personally observe her. The term observation period, as defined in the glossary, does not require that a single officer observe the person being tested. The definition only requires that “the person being tested has been observed” for twenty minutes immediately prior to the collection of a breath sample. The deputy who responded to the scene observed Hud-speth from at least 10:31 p.m., which gives a total observation time of twenty-nine minutes. Even if the observation time started when Deputy Campbell put Hud-speth in his patrol car at 10:40 p.m., the observation time would still be twenty minutes. Therefore, we find that this issue is without merit.
 

 B.
 
 Was
 
 proper proof made that Deputy Campbell was certified to operate the Intoxilyzer 8000 on the date of the accident?
 

 ¶ 11. Hudspeth argues that while Deputy Campbell provided proof that he was certified to operate the Intoxilyzer 8000 on the day of trial, he did not produce documentary proof that he was certified on the date of the accident.
 

 ¶ 12. The results of a breath-analysis test are only valid if performed by a person certified to give such a test.
 
 Johnston v. State,
 
 567 So.2d 237, 238 (Miss.1990). To prove that the operator is certified, the State must show that the breath test was “performed by an individual possessing a valid permit issued by the State Crime Laboratory for making such analysis.” Miss.Code Ann. § 63-11-19 (Rev.2004). “This statute, however, ‘is not
 
 *604
 
 a rule of evidence,’ so that evidence ‘otherwise admissible’ will not be excluded because of failure to comply with the statute.”
 
 Henley v. State,
 
 885 So.2d 89, 91(¶ 5) (Miss.Ct.App.2004) (quoting
 
 Jones v. State,
 
 858 So.2d 139, 143(¶ 10) (Miss.2003)).
 

 ¶ 13. The following exchange took place during the State’s direct examination of Deputy Campbell:
 

 Q. Okay. And then December the 27th of 2006, did you have a certificate that allowed you to run the intoxilyzer machine that was current?
 

 A. That’s right.
 

 BY [DEFENSE COUNSEL]: Your Honor, we would object until the original certificate can be produced for examination.
 

 BY THE COURT: Objection’s overruled. I think he’s sworn to tell the truth. The question is did he have one. I’ll allow that question. Answer [is] yes, correct?
 

 A. That’s correct.
 

 On cross-examination, Hudspeth’s counsel asked to see Deputy Campbell’s Intoxilyzer 8000 card. Deputy Campbell produced his current card, which was valid as of April 2007. He stated that proof of his certification from 2006 was kept at the Kemper County Sheriffs Department and that he could have someone bring it to the court. At the conclusion of cross-examination, the trial court released Deputy Campbell but instructed him to “[h]ave that certificate available, and you may be called as a witness later.” After the trial court overruled Hudspeth’s motion for a directed verdict, the judge stated to Hud-speth’s counsel, “you asked as to the verification of the certification status of Deputy Campbell. They’re securing that information now.” This is the last time the certification is mentioned in the record.
 

 ¶ 14. We find that this case is analogous to
 
 Henley.
 
 In
 
 Henley,
 
 the State introduced an uncertified copy of a police officer’s permit to perform a breath test.
 
 Henley,
 
 885 So.2d at 91(¶ 4). The supreme court held that “[t]he fact that the copy of Officer Clark’s permit was not certified is inconsequential because the same result was effectuated by him testifying at trial.”
 
 Id.
 
 at (¶ 6). As did the officer in
 
 Henley,
 
 Deputy Campbell testified that he was certified to perform a breath test, and he was subjected to cross-examination on his knowledge and experience on the matter.
 

 ¶ 15. Therefore, we find that the trial court did not abuse its discretion in finding sufficient proof was presented by Deputy Campbell’s testimony that he was certified to perform the test on the date of the accident. This issue is without merit.
 

 II. CAUSE OF EDWARDS’S DEATH
 

 ¶ 16. Edwards was deceased when emergency personnel arrived at the scene of the accident. The cause of death was determined by the coroner to be internal injuries from the car accident. An autopsy was not conducted. Hudspeth now argues that the State failed to prove a causal connection between the accident and Edwards’s death. Hudspeth asserts that the coroner for Kemper County, Kathy Lanier, was not qualified to give an opinion as to Edwards’s cause of death, and even if she was qualified, Lanier’s testimony was unreliable as she failed to testify with any degree of medical certainty.
 

 ¶ 17. Lanier testified that when she arrived at the scene, Edwards was deceased and “pinned inside a car” with her “legs and knees ... just bent up under the dashboard.” Lanier found nothing in Edwards’s blood work that would have contributed to her death. Lanier obtained a medical history from the victim’s mother. Lanier testified that nothing in Edwards’s
 
 *605
 
 medical history indicated that she suffered from a medical condition which would have caused her death on the evening of the accident. Based on her experience as a coroner, Lanier concluded that Edwards died of internal injuries caused by the automobile collision.
 

 ¶ 18. Hudspeth argues that Edwards’s medical history was “sketchy,” her only visible injuries were bruising to her legs, and no proof was shown that she did not have a heart attack or other acute problem which caused her death. The supreme court has held that:
 

 The law does not require an autopsy or medical evidence to establish [cause of] death. These facts are ordinarily proved by witnesses who saw the deceased after his death and who testified that the deceased was dead. The criminal agency or cause of death is usually shown by witnesses who saw the homicide, or by circumstances sufficient to establish the crime to the exclusion of every other reasonable hypothesis.
 

 Gibson v. State,
 
 503 So.2d 230, 232-33 (Miss.1987) (quoting
 
 King v. State,
 
 251 Miss. 161, 176, 168 So.2d 637, 643 (1964)). We find that, with no other facts on which to base an alternative “reasonable hypothesis,” it was proper for the jury to determine that the injuries from the wreck caused Edwards’s death. Therefore, we find that this issue is without merit.
 

 III. TESTIMONY OF THE ACCIDENT RECONSTRUCTIONIST
 

 ¶ 19. Sergeant Mike Cain, an accident reconstructionist with the Mississippi Highway Safety Patrol, testified that after reviewing the interview with Hudspeth, the evidence at the scene, measurements made at the scene, and photographs of the vehicles, it was his opinion that as the two vehicles entered the curve from opposite directions on Sport Watkins Road, Hudspeth’s vehicle crossed the centerline and impacted relatively head-on with Edwards’s vehicle. He testified that since there were no skid marks on the road, he did not use any scientific calculations in reconstructing the accident. Hudspeth objected to Sergeant Cain’s qualification as an expert on the basis that his testimony was not based on scientific methods and procedures.
 

 ¶20. For expert testimony to be admissible, it must be both relevant and reliable.
 
 Miss. Transp. Comm’n v. McLemore,
 
 863 So.2d 31, 38(¶ 16) (Miss.2003). The testimony is relevant if it will “assist the trier of fact to understand the evidence or to determine a fact in issue.” M.R.E. 702. In determining whether the principles and methods used are reliable,
 
 Daubert v. Merrell Dow Pharmaceuticals, Inc.,
 
 509 U.S. 579, 592-94, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), provides “ ‘an illustrative, but not an exhaustive, list of factors’ that trial courts may use in assessing the reliability of expert testimony.”
 
 McLemore,
 
 863 So.2d at 38(¶ 16) (quoting
 
 Pipitone v. Biomatrix, Inc.,
 
 288 F.3d 239, 244 (5th Cir.2002)). The
 
 Daubert
 
 factors include:
 

 whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique’s operation; and whether the theory or technique enjoys general acceptance within a relevant scientific community.
 

 Id.
 
 at 37(¶ 13) (citing
 
 Daubert,
 
 509 U.S. at 592-94, 113 S.Ct. 2786).
 

 ¶ 21. Again, the admission or exclusion of evidence, including expert testimony, is within the discretion of the trial court.
 
 Tunica County v. Matthews,
 
 926 So.2d 209, 212(¶ 5) (Miss.2006). The trial court
 
 *606
 
 found that Sergeant Cain had many years’ experience with the Mississippi Highway Safety Patrol, was certified as an accident reconstructionist, and had been accepted as an expert in both state and federal courts. Sergeant Cain testified that he was unable to perform any scientific tests because the physical conditions presented made it impossible to obtain reliable data. Therefore, he based his opinion that the collision occurred when Hudspeth’s car crossed the centerline of the road on the evidence that was available. Sergeant Cain was thoroughly cross-examined on his investigation. We find that the trial court did not err in allowing Sergeant Cain to testify. Therefore, this issue is without merit.
 

 IV. JNOV
 

 ¶ 22. Hudspeth argues that the trial court erred in denying her motion for a directed verdict and JNOV because the State failed to prove all the elements of aggravated DUI.
 

 ¶ 23. “In a criminal proceeding, motions for a directed verdict and [a JNOV] challenge the legal sufficiency of the evidence supporting the guilty verdict.”
 
 Croft v. State,
 
 992 So.2d 1151, 1157(¶24) (Miss.2008). Because a motion for a directed verdict and a motion for a JNOV both require consideration of the evidence before the trial court when made, this Court only reviews the ruling on the last occasion the challenge was made.
 
 Id.
 
 (citing
 
 McClain v. State,
 
 625 So.2d 774, 778 (Miss.1993)). The last challenge to the sufficiency of the evidence was Hudspeth’s motion for a JNOV. When reviewing the denial of a motion for a JNOV, “all of the evidence on behalf of the [S]tate must be taken as true, together with any reasonable inferences, and, if there is sufficient evidence to support a vei'dict of guilty, the motion for a directed verdict must be overruled.”
 
 Gibson,
 
 503 So.2d at 232.
 

 ¶ 24. Hudspeth was convicted under Mississippi Code Annotated section 63—11—30(5) (Supp.2008), which states in part: “Every person who operates any motor vehicle in violation of the provisions of subsection (1) of this section and who in a negligent manner causes the death of another ... shall, upon conviction, be guilty of a separate felony for each such death.... ” Subsection (l)(c) states that it is unlawful for any person to operate a vehicle who has a blood-alcohol concentration of .08 percent or more for persons who are above the legal age to purchase alcoholic beverages under state law. Miss. Code Ann. § 63-11-30(1)(c) (Supp.2008).
 

 ¶ 25. The jury was presented with evidence that Hudspeth’s blood-alcohol concentration was three times the legal limit; testimony was presented from Sergeant Cain that Hudspeth admitted in an interview on the night of the accident that she believed her vehicle had crossed the cen-terline of the road just before the collision; and evidence was presented that there was no other reasonable cause of Edwards’s death.
 

 ¶ 26. Taking the evidence presented by the State as true, we find the evidence legally sufficient to support Hudspeth’s conviction. Therefore, we find that this issue is without merit.
 

 ¶ 27. THE JUDGMENT OF THE KEMPER COUNTY CIRCUIT COURT OF CONVICTION OF DUI MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FOURTEEN YEARS SUSPENDED, SIX YEARS TO SERVE, AND FIVE YEARS OF SUPERVISED PROBATION AND PAYMENT OF A $2,000 FINE, APPEARANCE BOND FEE OF $500, AND $7,650 IN RESTITUTION IS AFFIRMED.
 
 *607
 
 ALL COSTS OF THIS APPEAL ARE ASSESSED TO KEMPER COUNTY.
 

 KING, C.J., MYERS, P.J., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.