# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01890-COA

BRETT PRINCE A/K/A BRETT M. PRINCE         APPELLANT
A/K/A BRETT MATTHEW PRINCE

v.

STATE OF MISSISSIPPI         APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/29/2015 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | KEVIN DALE CAMP<br>JARED KEITH TOMLINSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF FIVE COUNTS OF AGGRAVATED DRIVING UNDER THE INFLUENCE AND SENTENCED TO TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR COUNT I, FIVE YEARS EACH FOR COUNTS II AND III, AND TWENTY YEARS EACH FOR COUNTS IV AND V, WITH THE SENTENCE FOR COUNT I TO RUN CONSECUTIVELY TO THE SENTENCE FOR COUNT II, AND CONCURRENTLY WITH THE SENTENCES FOR COUNTS III-V |
| DISPOSITION: | AFFIRMED - 05/23/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND GREENLEE, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     Brett Prince was convicted in the First Judicial District of the Hinds County Circuit Court of five counts of aggravated driving under the influence (DUI) in violation of Mississippi Code Annotated section 63-11-30(5) (Rev. 2013).  These convictions stemmed from an automobile accident in which Prince struck the Salas family vehicle at a high rate of speed, causing a death and other severe injuries.  The jury found that Prince operated his vehicle while under the influence of alcohol, with a blood-alcohol concentration (BAC) over the legal limit of 0.08%, and that he was the cause of both the resulting death and serious bodily injuries.  As a result, Prince was sentenced to serve twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) for Count I, five years each for Counts II and III, and twenty years each for Counts IV and V, with the sentence for Count I to run consecutively to the sentence for Count II, and concurrently with the sentences for Counts III-V, totaling a term of thirty years' imprisonment.

¶2.     Prince now appeals, asserting that the State failed to present sufficient evidence to prove the requisite elements of the crimes charged, that the verdict was against the weight of the evidence, that the circuit court erred regarding the admission of certain evidence, and that the court erred in denying proposed jury instruction D-3.  Finding no error, we affirm.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

¶3.     On June 15, 2013, Prince collided with the Salas family's vehicle after running a red light at the intersection of Springridge Road and Highway 18.  Prince struck the Salas vehicle—occupied by Michael, his wife, and their four children—at an excessive rate of speed; there was dispute at trial among the accident-reconstruction experts regarding Prince's

exact speed. Michael testified as to his family's injuries. He sustained a broken hip and broken ribs, while the Salases' youngest son died at the scene. In addition, one of the children suffered paralysis of his right side, is now bound to a wheelchair, and suffers brain damage, delayed speech, inability to communicate, and loss of vision. Another Salas child suffered paralysis in her left arm and injuries that left permanent scarring on her face. The last child suffered a neck injury.

¶4. Trooper James Gray of the Mississippi Highway Patrol responded to the scene of the accident. When he arrived, Gray observed the Salases' tan SUV in the median, and Prince's Ford pickup truck located just east of the SUV. Gray noticed that the airbags had been deployed in Prince's vehicle, and that beer cans were found in and around the SUV driven by Michael; officers found a cooler full of alcoholic beverages in the bed of Prince's truck.

¶5. Witnesses to the collision testified to the events that took place. One witness, Jerrica Davis, stated that prior to the accident, Prince approached her vehicle from the rear, driving in an erratic manner, and caused her and others' vehicles to veer off the road. Davis stated that she then attempted to record Prince's license-plate number to report to authorities. Unable to catch up with Prince, however, Davis testified that she realized she would be able to get Prince's tag number at the red light they were approaching. But Davis observed that Prince was not slowing, and subsequently ran the red light, causing the ensuing collision. Following the wreck, multiple witnesses offered aid. Of those witnesses that assisted Prince, one witness testified that beer cans poured out of his truck when he opened the door and that he reeked of alcohol. Another witness stated that beer cans were flung out the truck's cab

3

during the course of the collision.

¶6.     Shortly after Gray appeared on scene, Trooper Maurice Kennedy of the Mississippi Department of Public Safety arrived to assist. Kennedy stated that he arrived at approximately 6:19 p.m., and that at that time, Prince was already handcuffed and seated in the back of a Hinds County Sheriff's Office patrol car. Kennedy stated that he observed Prince for forty-one minutes, which began at 6:35 p.m. Photographs at the scene, however, showed that Kennedy was outside of Prince's presence at 6:37 p.m., 6:46 p.m., 6:47 p.m., and 6:53 p.m. Nonetheless, Kennedy opined that Prince appeared to be intoxicated based upon Prince's slurred speech, glazed-red eyes, his emanating of an alcoholic odor, and his admission to Kennedy that he had been drinking. Following these observations, Kennedy elected to conduct a breathalyzer test at the scene, utilizing a portable "Intoxilyzer 8000." Kennedy began the breath test at 7:16 p.m., with the first breath sample being taken at 7:23 p.m. The results of the breathalyzer test indicated Prince possessed a BAC of .199%.

¶7.     On September 28, 2015, trial commenced, and Prince was convicted by a jury of five counts of aggravated DUI in violation of Mississippi Code Annotated section 63-11-30(5). Prince moved for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. The circuit court denied his motion. Prince now appeals.

**DISCUSSION**

I.      **The circuit court did not err by admitting into evidence the results of the Intoxilyzer 8000.**

¶8.     Before a court may admit into evidence the results of a DUI test, the court must first determine that: (1) the proper procedures were followed; (2) the operator of the machine was

4

properly certified to perform the test;[1] and (3) the accuracy of the machine was properly certified. *McIlwain v. State*, 700 So. 2d 586, 590 (¶18) (Miss. 1997). At trial, Prince sought to exclude the results of his breathalyzer test for two reasons: (1) Kennedy allegedly did not conduct the mandatory twenty-minute observation period before administering the breathalyzer, as required by police procedure; and (2) the State allegedly violated Uniform Rule of Circuit and County Court 9.04 by failing to disclose documents required for the introduction of the Intoxilyzer 8000 results. Upon review of the record, we find no error.

## A. The observation period was proper.

¶9. Prince first argues that Kennedy did not perform the mandatory twenty-minute observation period of Prince, and therefore, the results should not have been admitted into evidence—this was the principal theme of his defense throughout trial. "The standard of review regarding the admission or exclusion of evidence is abuse of discretion." *Parkman v. State*, 108 So. 3d 443, 445 (¶5) (Miss. Ct. App. 2012). "Absent an abuse of that discretion, the trial court's decision will not be disturbed on appeal." *Id.* (quoting *McCoy v. State*, 820 So. 2d 25, 31 (¶15) (Miss. Ct. App. 2002)).

¶10. In *Parkman*, this Court reaffirmed the principles set forth in the seminal case of *Hudspeth v. State*, 28 So. 3d 600 (Miss. Ct. App. 2009), and stated:

> Mississippi Code Annotated section 63-11-5(1)(c) (Rev. 2004) states that "[n]o such tests shall be given by any officer or any agency to any person within fifteen (15) minutes of consumption of any substance by mouth." However, a twenty-minute observation period is required under the Mississippi Department of Public Safety's guidelines and the Intoxilyzer 8000 Implied

___

[1] The record reflects that Kennedy had been trained and certified for operation of the Intoxilyzer 8000.

5

Consent Policies and Procedures manual:

> According to the Mississippi Department of Public Safety's guidelines and the Intoxilyzer 8000 Implied Consent Policies and Procedures manual, a twenty-minute observation period is required immediately before a breath sample is taken. The glossary to this manual defines observation period as follows: "A period during which the person being tested has been observed to determine that he has not ingested alcohol or other fluids, regurgitated, vomited, eaten, smoked, or placed anything into his mouth in the 20 minutes immediately prior to the collection of a breath sample."

*Parkman*, 108 So. 3d at 445 (¶6) (quoting *Hudspeth*, 28 So. 3d at 602 (¶6)). Relying on Mississippi Supreme Court precedent, we further elaborated:

> The length of time that a person charged with driving under the influence must be observed prior to the administration of the breath test is mandatory. In Mississippi, by statute, that length of time is fifteen minutes; however, police procedure requires that the person be observed for twenty minutes. The observation itself can be performed as long as the defendant is in the presence of the officer. The officer is not required to stare at the defendant for the observation to be effective. A dispute as to whether the observation lasted the mandatory length of time or whether the observation was performed while in the presence of an officer goes to the weight of the testimony and the credibility of the witnesses.

*Id.* at 446 (¶6) (quoting *Fisher v. City of Eupora*, 587 So. 2d 878, 882 (Miss. 1991)).

¶11.    In a pretrial suppression hearing, Prince sought to exclude the breathalyzer results by claiming that Kennedy had failed to observe Prince for the requisite amount of time. Through testimony provided at the suppression hearing, Kennedy stated that he recalled observing Prince over a time frame ranging from forty minutes to one hour—affirming, however, that he observed Prince for *at least* twenty minutes prior to his administering the breathalyzer. Kennedy stated that his observation primarily consisted of speaking with

6

Prince while he was handcuffed in the back of the patrol vehicle. Following Kennedy's testimony at the hearing, defense counsel did not offer any rebuttal evidence. Defense counsel then conceded the motion, and the circuit court subsequently denied the motion to suppress the breathalyzer results. Thus, the results were admitted into evidence. Reviewing Kennedy's testimony and the transcript of the suppression hearing, we cannot find that the denial of Prince's motion to suppress was an abuse of discretion.

¶12. At trial, however, Prince renewed his motion to suppress the breathalyzer results based upon photographic evidence that allegedly discredited Kennedy's testimony. Kennedy stated at trial that he observed Prince for forty-one minutes, which began at 6:35 p.m. But photographs taken from the scene showed that Kennedy was outside of Prince's presence at 6:37 p.m., 6:46 p.m., 6:47 p.m., and 6:53 p.m. Kennedy nonetheless opined that Prince appeared to be intoxicated based upon Prince's slurred speech, his glazed-red eyes, his emanating of an alcoholic odor, and his admission that he had been drinking. Kennedy further stated that during this time of observation, Prince did not drink, eat, vomit, burp, belch, regurgitate, smoke, or place anything in his mouth. Kennedy began the breath test at 7:16 p.m., with the first breath sample being taken at 7:23 p.m.

¶13. Kennedy was questioned by defense counsel regarding the times that he was pictured outside Prince's presence. Kennedy testified that he could not verify the accuracy of the time stamps on the photos taken with the digital camera, but stated that he used his watch when he recorded his observation time for purposes of administering the breathalyzer test—not the digital camera. According to his watch, Kennedy stated he began the observation at 6:35

7

p.m. With the last photo showing Kennedy outside Prince's presence being time stamped at 6:53 p.m., and the first breath sample being taken at 7:23 p.m., there was at least thirty minutes available for Kennedy to observe Prince before he provided his first sample. *See Hudspeth*, 28 So. 3d at 602 (¶6) ("[A] twenty-minute observation period is required *immediately before a breath sample is taken*.") (emphasis added). Therefore, regardless of the photographs discrediting Kennedy's observation as described, the circuit court found the defense failed to rebut that an adequate amount of time existed to satisfy the twenty-minute requirement.

¶14. Thus, we find as the circuit court did, and hold that the mandatory twenty-minute observation period was satisfied. Furthermore, any "dispute as to whether the observation lasted the mandatory length of time or whether the observation was performed while in the presence of an officer goes to *the weight of the testimony and the credibility of the witnesses*," not the admissibility of the evidence. *See Parkman*, 108 So. 3d at 446 (¶6) (emphasis added). As such, because proper observation procedure was followed, we find no abuse of discretion by the circuit court in denying Prince's motions to suppress, and therefore, in admitting the breathalyzer results into evidence. This issue is without merit.

### B. The State did not violate Uniform Rule of Circuit and County Court 9.04.

¶15. Prince next asserts that the breathalyzer results should not have been admitted into evidence because the State failed to disclose certification documents required for the introduction of those results, and thus, violated Rule 9.04. Supporting this argument, Prince relies upon Rule 9.04(I), which reads as follows:

8

If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:

> 1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and

> 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.

> 3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.

URCCC 9.04(I). Therefore, according to Rule 9.04, Prince asserts that the proper remedy would have been either to exclude the certification documents from evidence, grant a longer continuance to allow the defense to properly defend against the evidence, or declare a mistrial. We disagree.

¶16. The State points out that before breathalyzer results may be entered into evidence, the court must first determine whether the accuracy of the machine was properly certified. *McIlwain*, 700 So. 2d at 590 (¶18). Mississippi Code Annotated section 63-11-19 (Rev. 2013) requires that Intoxilyzer machines "shall be subject to periodic tests, 'but not less frequently than quarterly,' in order to ensure the accuracy of the machines." *Dobbins v. City of Starkville*, 938 So. 2d 296, 297 (¶6) (Miss. Ct. App. 2006). Prince, however, neither argued at trial, nor argues here on appeal, that the breathalyzer results should be excluded

9

because the machine was inaccurate or improperly calibrated. Rather, Prince argues that the State committed a discovery violation by not providing the documents prior to trial, and therefore, the certification documents should be excluded from evidence. And if the certification documents are excluded from evidence, then the State cannot certify the accuracy of the Intoxilyzer results, which Prince concludes would be fatal to the State's case. This line of reasoning, however, is misguided, as the State introduced evidence, other than the certification documents at issue, which sufficiently proved the machine's accuracy—namely, Kennedy's testimony and an IP-01E form.

### 1. Kennedy's Testimony and the IP-01E Form

¶17. First, Kennedy testified that the Intoxilyzer 8000 utilized was a "self-calibrating machine." Kennedy further explained that with such an instrument, the machine took in a number of air blanks (which samples the surrounding air), and then performed a self-diagnostic check. Once the self-calibration is complete, it prompts the subject to provide a sample. If, through the self-calibration and its diagnostic check, errors are revealed, the machine will not allow the subject to blow, and abort the test—which would have required Kennedy to use another machine. Second, the State offered into evidence an IP-01E form, which displayed the results of the breathalyzer test, and provided information that the machine was correctly calibrated and accurate. The IP-01E form stated that the machine's diagnostics were "ok," and that the "calibration of the instrument [was] certified to meet acceptable standards of accuracy." The IP-01E form was introduced as Exhibit 168, and defense counsel acknowledged receiving this document through discovery. Therefore, both

Kennedy's testimony and the IP-01E form allowed the court to satisfy its initial determination that the machine was accurate. *See Dobbins*, 938 So. 2d at 297 (¶6).

## 2.    Calibration Certificates

¶18.    Prince, however, does not contest this portion of Kennedy's testimony, or the IP-01E form—instead, Prince argues that the calibration certificates, which contained much of the same information, were required to be introduced, either before or simultaneously, with the IP-01E form. The disputed certificates affirmed the accuracy of the Intoxilyzer used on Prince, before and after Prince's breath sample was taken. Because they allegedly were not disclosed before trial, Prince asserts that this constituted a discovery violation, and therefore, he was entitled to some form of relief as set out in Rule 9.04.

¶19.    "In reviewing rulings of a trial court regarding matters of evidence . . . and discovery violations, the standard of review is abuse of discretion." *Myers v. State*, 145 So. 3d 1143, 1147 (¶10) (Miss. 2014). Prince argues the circuit court abused its discretion when it admitted into evidence the certification documents and breathalyzer results, resulting in prejudice to Prince. His principal foundation for this argument is that, had the defense been made aware that the State would seek to introduce these calibration certificates, the defense would have requested other documents regarding the machine's accuracy. Prince further argues that this alleged discovery violation hindered the defense's ability to properly investigate and defend against the undisclosed documents.

¶20.    "When a discovery violation is alleged, we must review the record to determine whether the procedure set forth in *Box v. State*, 437 So. 2d 19, 23-25 (Miss. 1983)

11

(Robertson, J., specially concurring), was followed by the trial court." *Bankston v. State*, 907 So. 2d 966, 971 (¶15) (Miss. Ct. App. 2005). The guidelines set forth in *Box* have been adopted in Rule 9.04(I). *Id.* Reviewing Rule 9.04 and the record, we find that the circuit court complied with the *Box* procedures, and thus did not abuse its discretion.

¶21. The circuit court stated that it was not going to find there was a discovery violation by the State for a variety of reasons. First, the defense did not prove that the State willfully withheld the certification documents—the State claimed it disclosed the documents, while the defense claimed it did not. *See Travis v. State*, 13 So. 3d 320, 329 (¶30) (Miss. Ct. App. 2008) (holding "[e]xclusion of evidence for a discovery violation is an extreme sanction and is only appropriate where . . . [the] violation was willful and motivated by a desire to obtain a tactical advantage"). Second, the information provided in the IP-01E form was essentially the same as that found within the allegedly undisclosed certification certificates. Third, the court found that defense counsel—being well experienced in DUI litigation—could have easily requested any additional documentation he knew, or believed, he would need. Lastly, the court found that any discovery violation, if one had occurred, would be cured by a continuance—which the court provided defense counsel. The court specifically granted the continuance so that the defense could review the certification documents with its expert; following the continuance, defense counsel did not move for another continuance or a mistrial.

¶22. Therefore, we find that the circuit court properly followed the procedures set forth in *Box* and Rule 9.04(I); thus, the circuit court did not abuse its discretion in admitting the

12

certification documents into evidence. As there was ample evidence related to the Intoxilyzer 8000's accuracy, we do not find there was any discovery violation requiring the exclusion of these results, nor grounds to declare a mistrial. This issue is without merit.

## II. The circuit court did not err in denying Prince's motion for a JNOV.

¶23. Prince next argues that the circuit court erred in denying his motion for a JNOV. "A challenge to the sufficiency of the evidence requires this Court to determine whether the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]'" *Nolan v. State*, 182 So. 3d 484, 488-89 (¶7) (Miss. Ct. App. 2016) (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)). Evidence is deemed "insufficient to support the verdict where 'the facts and inferences . . . point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty[.]'" *Id.* The evidence must be viewed in the light most favorable to the State. *Id.*

¶24. Prince was convicted of aggravated DUI under section 63-11-30(5), which required the State to show that: (1) Prince operated a vehicle while he was under the influence of an intoxicating liquor or possessed a BAC of .08% or higher; (2) he drove in a negligent manner; and (3) his negligent operation caused the death of another, or mutilated, disfigured, permanently disabled, or destroyed the tongue, eye, lip, nose, or any other limb, organ, or member of another. *See* Miss. Code Ann. § 63-11-30(5). Looking to the evidence presented by the State, we find that there was sufficient evidence to prove beyond a reasonable doubt

13

that Prince violated section 63-11-30(5).

¶25.    As discussed above, the State offered into evidence Prince's breathalyzer results, which showed he had a BAC of .199% at the time of his arrest—over twice the legal limit. *See* Miss. Code Ann. § 63-11-30(1)(d)(i).  This alone would be enough to prove the first element.  However, Kennedy provided additional evidence, testifying that Prince had slurred speech, had glazed-red eyes, emanated an alcoholic odor, and admitted to Kennedy that he had been drinking.  Witnesses also testified that Prince was driving erratically before the accident, and beer cans fell from his vehicle during the collision or shortly thereafter.  The State next showed that Prince operated his vehicle in a negligent manner, sufficiently satisfying the second element of section 63-11-30.  Again, witness testimony revealed that prior to the collision, Prince's driving forced other drivers off the road.  Furthermore, the accident was caused because Prince negligently ran a red light, causing him to strike the Salases' vehicle, which had the right-of-way.

¶26.    Regarding the final element, Prince asserts that expert testimony was required to prove the severity of the injuries sustained by the Salases.  In arguing this point to the circuit court, defense counsel cited no authority, and fails to do so on appeal to this Court.  We find as the circuit court did, and hold that Michael's testimony provided sufficient evidence of his and his family's severe injuries.  Michael testified that he sustained a broken hip and broken ribs, while the Salases' youngest son died at the scene.  Additionally, one of the children suffered paralysis of his right side; is wheelchair bound; and suffers brain damage, delayed speech, inability to communicate, and loss of vision.  Another Salas child suffered paralysis in her

14

left arm and permanent scarring on her face. The last child suffered a neck injury.

¶27. We find that the State did not have to provide expert testimony regarding the degree of injuries sustained by the Salas family. Thus, Michael's testimony was sufficient to prove the final element of section 63-11-30(5). When reviewing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the State. *Bush*, 895 So. 2d at 843 (¶16). In doing so, we find there was substantial, credible, and reasonable evidence to sufficiently support Prince's convictions of aggravated DUI. This issue is without merit.

### III. The verdict was not against the overwhelming weight of the evidence.

¶28. Prince next argues that the verdict was against the overwhelming weight of the evidence. This Court "will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* at (¶18). "The evidence should be weighed in the light most favorable to the verdict." *Id.*

¶29. Viewing the evidence in the light most favorable to the verdict, we cannot say that to let the jury's verdict stand would sanction an unconscionable injustice. *See id.* (citing *Amiker v. Drugs For Less Inc.*, 796 So. 2d 942, 947 (¶18) (Miss. 2000)). Based upon the evidence introduced by the State, we find that any rational trier of fact could have found Prince guilty of aggravated DUI beyond a reasonable doubt. Despite Prince's attempt to discredit Kennedy's testimony regarding his observation, the circuit court found that proper procedure was followed, resulting in the admission of Prince's breathalyzer results. We have found no error with the admission of those BAC results. Thus, regardless of whether the weight of

Kennedy's testimony was substantially lessened by the arguments set forth at trial by Prince, the jury still found Kennedy's statements credible and convincing. As such, we find the State provided sufficient evidence for each element of the charged offense, and therefore, the jury's verdict is not so contrary to the overwhelming weight of the evidence that to let it stand would sanction an unconscionable injustice. We find no merit to this issue.

### IV. The circuit court did not err in denying jury instruction D-3.

¶30. Lastly, Prince argues that the trial court abused its discretion in denying his proposed jury instruction, D-3. We give "abuse-of-discretion deference to the trial judge's decision" with regard to the giving or refusing of jury instructions. *Flowers v. State*, 51 So. 3d 911, 912 (¶5) (Miss. 2010). "[P]roposed instructions should generally be granted if they are correct statements of law, are supported by the evidence, and are not repetitious." *Id*. at (¶6) (citation omitted). If, however, "[w]hen read together, . . . the jury instructions state the law of the case and create no injustice, then no reversible error will be found." *Watkins v. State*, 101 So. 3d 628, 634 (¶22) (Miss. 2012).

¶31. Denied jury instruction D-3 read as follows:

> According to the Mississippi Department of Public Safety's guidelines and the Intoxilyzer 8000 Implied Consent Policies and Procedures manual, a twenty-minute observation period is required immediately before a breath sample is taken. The observation period is a period during which the person being tested has been observed to determine that he has not ingested alcohol or other fluids, regurgitated, vomited, eaten, smoked, or placed anything into his mouth in the 20 minutes immediately prior to the collection of a breath sample.
>
> If you find that Master Sergeant Maurice Kennedy did not observe the Defendant for the required twenty-minute period prior to BRETT MATTHEW PRINCE'S breath test, you cannot find that his blood alcohol concentration was at or above eight one-hundredths percent (.08%) and must find him NOT

GUILTY.

¶32.    By having this proposed jury instruction denied, Prince claims he was deprived his right to have his theory of the case presented to the jury—i.e., that Kennedy did not observe Prince for the mandatory twenty-minute period. The trial court, however, denied the instruction for two reasons: (1) defense counsel had no caselaw to support the instruction; and (2) the instruction inaccurately stated the law in that it would encroach upon the circuit court's gatekeeping authority regarding the admissibility of evidence. We agree.

¶33.    Before the breathalyzer results could be admitted into evidence, the trial court was required to determine whether the proper procedures were followed. *McIlwain*, 700 So. 2d at 590 (¶17). Here, the circuit court found they were, and admitted Prince's breathalyzer results. The admissibility of evidence is within the province of the court. Once evidence is deemed competent, and admitted by the court, then the jury "may determine the weight to be given the [evidence], and this includes all the attendant circumstances showing the strength or weakness of the [evidence]. The jury is the judge of the weight and worth of the [evidence] admitted . . . by the judge." *Harden v. State*, 59 So. 3d 594, 609 (¶40) (Miss. 2011). To reiterate, "[a] dispute as to whether the observation lasted the mandatory length of time or whether the observation was performed while in the presence of an officer goes to the *weight of the testimony and the credibility of the witnesses.*" *Parkman*, 108 So. 3d at 446 (¶6) (emphasis added).

¶34.    Here, the jury was instructed as follows:

> The production of evidence in court is governed by the rules of law. From
> time to time during the trial it has been [the] duty as judge to rule on the

17

admissibility of evidence. You must not concern yourself with the reasons for my rulings since they are controlled and governed by the rules of law . . . . It is [the jury's] exclusive province to determine the facts in this case and to consider and weigh the evidence for that purpose . . . . You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

Thus, we find that the instructions ultimately given were accurate statements of law, and proficiently outlined the jury's duty. The jury was free to weigh Kennedy's testimony as it found fit—however, it was not within the jury's duty to determine whether evidence presented in the case was competent or admissible. *See Harden*, 59 So. 3d at 609 (¶40) (holding "[i]t is the judge's duty to determine whether or not the [evidence] is admissible"). And because Prince repeatedly asserted his theory of the case throughout trial, we find the circuit court did not abuse its discretion in denying proposed jury instruction D-3. This issue is also without merit.

## CONCLUSION

¶35. Reviewing the record before this Court, we find no error on the part of the circuit court. Accordingly, we affirm.

¶36. **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF FIVE COUNTS OF AGGRAVATED DRIVING UNDER THE INFLUENCE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR COUNT I, FIVE YEARS EACH FOR COUNTS II AND III, AND TWENTY YEARS EACH FOR COUNTS IV AND V, WITH THE SENTENCE FOR COUNT I TO RUN CONSECUTIVELY TO THE SENTENCE FOR COUNT II, AND CONCURRENTLY WITH THE SENTENCES FOR COUNTS III-V, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS, J.,**

**CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**